IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE WRIGHT, Individually and as Trustee of THE WENSLEY HEFNI 2011 IRREVOCABLE TRUST, and STEVEN BROMBERG,<br><br>　　Plaintiffs,<br><br>v.<br><br>SILVER CREEK PHARMACEUTICALS, INC., NICK TAYLOR, TIMOTHY THROSBY, MARK AGNE, JAMES MARKS and THOMAS MURTAGH,<br><br>　　Defendants. | Civ. A. No. 1:23-cv-11622-PBS |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS AMENDED COMPLAINT

John K. Wells
GREENBERG TRAURIG, LLP
One International Place, Suite 2000
Boston, Massachusetts 02110
Tel: (617) 310-6039
Email: wellsj@gtlaw.com

Kevin G. Kenneally
Warren D. Hutchison
Ben Dunlap
FREEMAN, MATHIS & GARY, LLP
60 State Street, Suite 600
Boston, MA 02109-1800
Tel: (617) 963-5968
Email: kevin.kenneally@fmglaw.com

*Attorneys for Defendants Silver Creek Pharmaceuticals, Inc., Nick Taylor, Timothy Throsby, Mark Agne, James Marks and Thomas Murtagh*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

FACTUAL ALLEGATIONS .................................................................................................2

ARGUMENT .........................................................................................................................3

I.     OVERARCHING LEGAL STANDARDS ................................................................3

II.    PLAINTIFFS CANNOT MAINTAIN FEDERAL SECURITIES
       COUNTS I & II. .........................................................................................................4

       A.    Count I Fails Because Neither Plaintiff Alleges A
             Misrepresentation or Omission In Connection With The Purchase
             of Securities. ....................................................................................................4

       B.    Count II Fails Because There Can Be No Secondary Liability For
             Deficient Primary Liability Under Count I .......................................................4

III.   PLAINTIFFS CANNOT MAINTAIN COUNTS I, II, III AND VI
       MISREPRESENTATION CLAIMS UNDER SECURITIES OR
       COMMON LAW ........................................................................................................5

       A.    The AC Fails To Plead Misrepresentation With Particularity As
             Required By Rule 9(b) And The PSLRA. .........................................................6

       B.    The AC Fails to Adequately Plead a Misstatement or Omission.....................8

             1.    The AC Fails To Plead A False Statement ............................................ 8
             2.    The AC Fails to Plead An Actionable Omission .................................. 9
             3.    The AC Fails to Plead A Strong Inference Of Scienter...................... 10
             4.    The AC Fails to Plead Economic Loss or Loss Causation. ................ 13
             5.    Nondisclosure Will Not Support a Claim for Negligent
                   Misrepresentation............................................................................... 15

IV.    PLAINTIFFS' OTHER SCATTERSHOT COUNTS IV, V, VII, VIII
       AND IX ARE NOT WELL-PLEADED AND FAIL AS A MATTER OF
       LAW .........................................................................................................................16

       A.    Counts IV and V Fail To State A Claim For Breach of Contract or
             The Implied Covenant Because Ms. Wright Received Contractual
             Notice..............................................................................................................16

       B.    Count VII For Breach of Fiduciary Duty Is Derivative And
             Plaintiffs Fail To Satisfy The Prerequisites of Rule 23.1 ..............................16

       C.    Count VIII For Unjust Enrichment Fails Due To Remedies At Law ........20

       D.    Count IX For Declaratory Relief Fails To Plead a Live
             Controversy.....................................................................................................20

CONCLUSION.....................................................................................................................21

*ACTIVE 691039389v2*

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
  512 F.3d 46 (1st. Cir. 2008) .................................................................................. 4, 5

*Access Cardiosystems, Inc. v. Fincke*,
  404 B.R. 593 (Bankr. D. Mass. 2009) ...................................................................... 15

*Adams v. Hyannis Harborview, Inc.*,
  838 F. Supp. 676 (D. Mass. 1993) ........................................................................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... 3

*Baron v. Smith*,
  380 F.3d 49 (1st Cir. 2004) ........................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 3

*Bio-Vita, Ltd. v. Rausch*,
  759 F. Supp. 33 (1st Cir. 1991) .................................................................................. 6

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ................................................................................................... 4

*In re Boston Sci. Corp. Sec. Litig.*,
  686 F.3d 21 (1st Cir. 2011) ...................................................................................... 10

*In re Boston Sci. Corp. Secs. Litig.*,
  2022 U.S. Dist. LEXIS 228447 (D. Mass. Dec. 20, 2022) ...................................... 13

*In re: Boston Tech. Sec. Litig.*,
  8 F. Supp.2d 43 (D. Mass. Feb. 5, 1998) .................................................................. 5

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994) ................................................................................................... 9

*City of Bristol Pension Fund v. Vertex, Inc.*,
  12 F.Supp.3d 225 (D. Mass. Mar. 31, 2014) ...................................................... 4, 12

*Correa-Martinez v. Arrillaga-Belendez*,
  903 F.2d 49 (1st Cir. 1990) ........................................................................................ 3

*Coyne v. Metabolix, Inc.*,
  943 F.Supp.2d 259 (D. Mass. Sept. 20, 2013) ........................................................ 12

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................. 13

*Gagliardi v. Sullivan*,
  513 F.3d 301 (1st Cir. 2008) ...................................................................................... 3

*Goebel v. Schmid Bros., Inc.*,
 871 F. Supp. 68 (D. Mass. Oct. 14, 1994) ...........................................................6

*Greebel v. FTP Software, Inc.*,
 194 F.3d 185 (1st Cir. 1999) ..........................................................6, 10, 11

*Gross v. Summa Four, Inc.*,
 93 F.3d 987 (1st. Cir. 1996) ..........................................................9, 10

*Haslam v. McLaughlin*,
 2022 U.S. Dist. LEXIS 203104 (D. Mass. Nov. 8, 2022) .......................................5

*Hill v. Gozani*,
 638 F.3d 40 (1st Cir. 2011) ...........................................................10

*Jones v. NCO Fin. Servcs.*,
 2014 U.S. Dist. LEXIS 161169 (D. Mass. Nov. 14, 2014) .......................................3

*Joyce v. Bobcat Oil & Gas, Inc.*,
 2008 U.S. Dist. LEXIS 27181 (M.D. Pa. Apr. 3, 2008) .......................................14

*Kaufman v. CVS Caremark Corp.*,
 836 F.3d 88 (1st Cir. 2016) ...........................................................6

*Leavitt v. Alnylam*,
 451 F.Supp.3d 176 (D. Mass. Mar. 23, 2020) ..........................................6, 8

*Lenartz v. Am. Superconductor Corp.*,
 879 F.Supp.2d 167 (D. Mass. July 26, 2012) ...........................................5

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
 880 F. Supp. 49 (D. Mass. Mar. 23, 1995) ...........................................6

*Local No. 8 IBEW Ret. Plan v. Vertex Pharms., Inc.*,
 140 F.Supp.3d 120 (D. Mass. Sept. 30, 2015) ..........................................10, 11, 12

*Maldonado v. Dominguez*,
 137 F.3d 1 (1st Cir. 1998) ...........................................................11

*Mass. Ret. Sys. v. CVS Caremark Corp.*,
 716 F.3d 229 (1st Cir. 2013) ...........................................................13

*McCabe v. Ernst & Young, LLP*,
 494 F.3d 418 (3d Cir. 2007) ...........................................................14

*McIntosh v. Wells Fargo Bank, N.A.*,
 2020 U.S. Dist. LEXIS 102588 (N.D. Cal. June 11, 2020) .......................................16

*N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*,
 567 F.3d 8 (1st Cir. 2009) ...........................................................6

*Nairobi Holdings Ltd. v. Brown Brothers Harriman & Co.*,
 2002 U.S. Dist. LEXIS 16995 (S.D.N.Y. Sept. 10, 2002) .......................................4

*In re Polaroid Corp. Secs. Litig.*,
 134 F.Supp.2d 176 (D. Mass. Mar. 21, 2001) (Saris, J.) .......................................14

*ACTIVE 691039389v2*

*In re: PolyMedia Corp. Sec. Litig.*,
    432 F.3d 1 (1st. Cir. 2005) ................................................................................5

*Prudential Ins. Co. of America v. Turner & Newall, PLC*,
    1988 U.S. Dist. LEXIS 15960 (D. Mass. Dec. 12, 1988) .....................................6, 8

*Reed v. Zipcar, Inc.*,
    883 F. Supp. 2d 329 (D. Mass. 2012) ...................................................................20

*Rodriguez Cadiz v. Mercado Jiminez*,
    579 F.Supp. 1176 (D.P.R. Nov. 30, 1983) ............................................................14

*Rodriguez-Ortiz v. Margo Caribe, Inc.*,
    490 F.3d 92 (1st Cir. 2007) ............................................................................10, 11

*Santos v. Sanyo Mfg. Corp.*,
    2013 U.S. Dist. LEXIS 63596 (D. Mass. May 3, 2013) ........................................15

*Shaulis v. Nordstrom, Inc.*,
    865 F.3d 1 (1st. Cir. 2017) ............................................................................15, 20

*Shaw v. Digital Equipment Corp.*,
    82 F.3d 1194 (1st Cir. 1996) ................................................................................9

*Shell Oil Co. v. Noel*,
    608 F.2d 208 (1st. Cir. 1979) ..............................................................................20

*Suna v. Bailey Corp.*,
    107 F.3d 64 (1st Cir. 1997) ..................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................11, 13

*Tharp v. Acacia Corp.*,
    321 F. Supp. 3d 206 (D. Mass. 2018) ..................................................................12

*Tomasella v. Nestlé United States*,
    962 F.3d 60 (1st Cir. 2020) ..................................................................................20

*Transpac Marine, LLC v. Yachtinsure Svcs., Inc.*,
    2023 U.S. Dist. LEXIS 23655 (D. Mass. Feb. 13, 2023) .........................................5

*Tyler v. Michaels Stores, Inc.*,
    840 F.Supp.2d 438 (D. Mass. Jan. 6, 2012) ...........................................................5

*Webb v. Fain*,
    2002 U.S. Dist. LEXIS 25578 (D. Or. Oct. 3, 2002) .............................................14

*Zurich Am. Ins. Co. v. Watts Regul. Co.*,
    796 F. Supp. 2d 240 (D. Mass. 2011) ..................................................................20

**State Cases**

*Brookfield Asset Mgmt. v. Rosson*,
    261 A.3d 1251 (Del. 2021) ..................................................................................19

*Buffalo-Water 1, LLC v. Fidelity Real Estate Company, LLC*,
   481 Mass. 13 (2018) ....................................................................................................8

*Carr v. New Enter. Assocs.*,
   2018 Del. Ch. LEXIS 100 (Del. Ch. Mar. 26, 2018) ...............................................18

*CDF Firefighters v. Maldonado*,
   158 Cal. App. 4th 1226 (Cal. Ct. App. 2008) .........................................................16

*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*,
   152 A.3d 1248 (Del. 2016) (Strine, C.J., concurring) ............................................18

*Fordyce v. Town of Hanover*,
   457 Mass. 248 (2010) .............................................................................................5, 8

*Globis Partners, L.P. v. Plumtree Software, Inc.*,
   2007 Del. Ch. LEXIS 169 (Del. Ch. Nov. 30, 2007) ...............................................19

*Gossels v. Fleet Nat. Bank*,
   453 Mass. 366 (2009) ..............................................................................................15

*Green v. LocatePlus Holdings, Corp.*,
   2009 Del. Ch. LEXIS 85 (Del. Ch. May 15, 2009) ..................................................19

*Greenery Rehabilitation Group v. Antaramian*,
   36 Mass.App.Ct. 73 (Mass. App. Ct. Feb. 18, 1994)................................................9

*Guz v. Bechtel Nat. Inc.*,
   24 Cal. 4th 317 (Cal. 2000).....................................................................................16

*Harrison v. NetCentric Corp.*,
   433 Mass. 465 (2001) ..............................................................................................18

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
   906 A.2d 766 (Del. 2006) ........................................................................................19

*Masingill* v. *EMC Corp.*,
   449 Mass. 532 (2007) ................................................................................................5

*Nei v. Burley*,
   388 Mass. 307 (1983) ..............................................................................................15

*Sullivan v. Five Acres Realty Trust*,
   487 Mass. 64 (2021) ..................................................................................................5

*Wolf v. Prudential-Bache Securities*,
   41 Mass. App. Ct. 474 (Mass. App. Ct. Oct. 10, 1996)............................................9

**Federal Statutes**

15 U.S.C. § 78u-4(b)(1) ...................................................................................................6

15 U.S.C. § 78u-4(b) (2) ...........................................................................................6, 10

15 U.S.C. § 78u-4(b)(4) .................................................................................................13

28 U.S.C. § 2201 ..............................................................................................................5

*ACTIVE 691039389v2*

Securities Exchange Act of 1934 § 10(b) ...........................................................................4, 5, 10, 15

Securities Exchange Act of 1934 § 10b-5..........................................................................5, 9, 10, 14

Securities Exchange Act of 1934 § 20(a) ............................................................................................5

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................2, 5, 6, 8, 10, 15

Fed. R. Civ. P. 12(b)(1)................................................................................................................2, 5

Fed. R. Civ. P. 12(b)(6)...................................................................................................................2

Fed. R. Civ. P. 23.1 .......................................................................................................................19

**Constitutional Provisions**

U.S. Const. art. III........................................................................................................................20

**Other Authorities**

Restatement (Second) of Torts § 551 (1976) ...................................................................................9

## INTRODUCTION

The Amended Complaint ("AC") suffers from the same fatal flaws as the initial pleading. Plaintiff Suzanne Wright has now dropped five facially deficient legal claims and added a new Plaintiff, Dr. Steven Bromberg, who also lacks standing to assert federal securities claims. Plaintiffs' state common law claims are unchanged and should be dismissed for myriad reasons.

As a threshold matter, a claim that Plaintiffs "would have invested" more money if they had known about Silver Creek's nascent exploration in the area of radiation illness cannot be maintained under federal securities laws.  Such claims belong only to investors who purchase shares in reliance on fraudulent information and are harmed thereby.  Ms. Wright did not purchase. Dr. Bromberg did buy some securities (which, if Plaintiffs' theory is credited, have appreciated in value), but his legal claim is that he did not purchase more because of fraud.  Neither Plaintiff can maintain federal securities claims for securities they did not purchase.  If their claims about dilution, mismanagement or contract rights are viable (they are not), relief lies under state law.

The failings of the AC are also far more substantive.  Plaintiffs fail to plead an actionable misrepresentation claim—under either the securities laws or common law—in Counts I-III and VI. Plaintiffs do not identify any false statement.  Rather, they argue that that they should have been told that the Company had initiated a pre-clinical rodent study related to radiation illness, which represented less than 1% of the Company's investment in stroke, its primary area of research.  Yet Plaintiffs fail to plead why disclosure of such facially immaterial facts was required or justified. The AC fails to plead a materially false statement or omission, a duty to disclose, economic loss or loss causation.  Most notably, the AC makes no attempt whatsoever to plead the required "strong inference" of scienter with regard to any Defendant; instead, the AC relies improperly on group pleading against "Defendants," collectively, and pleads allegations of scienter "on information and

-1-

belief" without any particularized facts.  The AC repeatedly falls short of the heightened pleading requirements of Federal Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA").

Rule 12(b)(6) dismissal of all claims is appropriate and warranted.  Moreover, with dismissal of the federal claims in Counts I and II, this Court lacks jurisdiction over the pendant state law claims, which should additionally be dismissed under Rule 12(b)(1).

## FACTUAL ALLEGATIONS

Plaintiffs are stockholders in Defendant Silver Creek Pharmaceuticals, Inc. ("Silver Creek" or the "Company"), a private biotechnology company which develops medicines designed to promote tissue regeneration and treat acute organ injuries.  (AC ¶¶ 13, 23-24).[1]  Defendants Nick Taylor, Timothy Throsby, Mark Agne, James Marks and Thomas Murtagh are or were Company board members. (*Id.* ¶14).  The Company held a 2022 fundraising round in which it "s[old] unsecured notes convertible into Silver Creek stock" (the "CB Round").  (*Id.* ¶34-35; 64; Ex. D). The CB Round was priced with a collar – a "proposed upper valuation of $12 per share or approximately $500 million" and "floor valuation of $6 per share or $250 million." (*Id.* ¶¶36; 48). The Company made disclosures about the business and answered investor questions.  (*Id.* ¶43-50; 54-58).  The AC alleges that Defendants "intentional[ly]" failed to disclose early scientific testing efforts in the area of radiation illness in order to "obscure" a "dramatic increase in the value of Silver Creek" and for "Defendants to benefit personally at the expense of the Plaintiffs." (*Id.* ¶62; 67).  Plaintiffs believe that "expansion . . . into the field of radiation illness will have a major impact on the valuation of Silver Creek stock."  (*Id.* ¶72).  By contrast, the Company explained that "[t]he goal of a radiation study was to make a very small expenditure in a limited preclinical trial to support a possible initial engagement with a variety of research and government

---

[1] Consistent with the AC, references to "Ms. Wright" herein refer both to Suzanne Wright in her individual capacity and in her capacity as trustee of Plaintiff Wensley Hefni 2011 Irrevocable Trust.

agencies[,]" "[t]he path was not seen as one of commercial exploitation, rather a chance to explore the therapeutic potential of [the Company's IP]" and "the scale of the initial radiation illness effort (at less than 1% of the investment we are making in stroke) and the likelihood of a significant outcome were both so small and so remote as to not be material." (*Id.* ¶82; Ex. H). And, while the Company "engage[d] informally with government funding and research agencies," "[f]eedback from those conversations was not productive with radiation illness[.]" (*Id.*). The AC does not allege that the Company's efforts in radiation illness progressed beyond the initial study.

Plaintiffs were informed and aware of the CB Round. (*Id.* ¶44-49; 56; Ex. A-C). Ms. Wright "did not invest." (*Id.* ¶65). Dr. Bromberg made a small investment but alleges that he was "induced" to "invest less than he otherwise would have." (*Id.* ¶¶66; 88). The AC alleges that Defendants "denied [Plaintiffs] any meaningful opportunity to participate." (*Id.* ¶88).

## ARGUMENT

### I.   OVERARCHING LEGAL STANDARDS.

To survive a motion to dismiss, a complaint must plead enough facts to "plausib[ly]" state a claim and "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569-70; 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal, a complaint must set forth "more than labels and conclusions," *Twombly*, *supra* at 555, and must include "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008). "Courts need not credit conclusory statements or merely subjective characterizations, but rather plaintiffs must set forth in their complaint specific, nonconclusory factual allegations regarding each material element to sustain recovery." *Jones v. NCO Fin. Servcs.*, 2014 U.S. Dist. LEXIS 161169, *3 (D. Mass. Nov. 14, 2014). *See also Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990).

-3-

## II.      PLAINTIFFS CANNOT MAINTAIN FEDERAL SECURITIES COUNTS I & II.

### A.      Count I Fails Because Neither Plaintiff Alleges A Misrepresentation or Omission In Connection With The Purchase of Securities.

Count I must be dismissed as a matter of law because Plaintiffs lack standing to proceed under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act").  A potential buyer who was dissuaded from purchasing securities does not have standing, as the U.S. Supreme Court has held that Section 10(b) standing is limited to "actual purchasers or sellers of securities."  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-49 (1975); *see also Nairobi Holdings Ltd. v. Brown Brothers Harriman & Co.*, 2002 U.S. Dist. LEXIS 16995, at *9 (S.D.N.Y. Sept. 10, 2002); *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st. Cir. 2008) (plaintiff must allege a material misrepresentation or omission "in connection with" the purchase or sale of a security).

Ms. Wright admittedly did not purchase securities in the CB Round.  (AC ¶62).  And, although Dr. Bromberg did invest in the CB Round, his claims do not concern the securities that he purchased but rather securities that he did not purchase.  (*Id.* ¶88) (Dr. Bromberg was induced "to invest less than he otherwise would have").  Put differently, Dr. Bromberg does not allege any misrepresentation or omission in connection with his purchase which caused him to suffer damages; rather, his claim is premised on *unpurchased* securities.  In this regard, Dr. Bromberg's claim is no different than Ms. Wright's.  Under *Blue Chip Stamps*, both Plaintiffs lack standing.[2]

### B.      Count II Fails Because There Can Be No Secondary Liability For Deficient Primary Liability Under Count I.

Count II must be dismissed as a matter of law because it is a secondary liability claim for

---

[2] Although Dr. Bromberg's status as a purchaser is an effort to comply with the *Blue Chip Stamps* "purchaser/seller" rule, it falls short of conferring standing in this context. A plaintiff "who suffered no loss because of a misrepresentation lacks standing to sue[.]" *City of Bristol Pension Fund v. Vertex, Inc.*, 12 F.Supp.3d 225, 235 (D. Mass. Mar. 31, 2014).  Here, Dr. Bromberg alleges that the securities he purchased were offered at a "low valuation" and enjoyed a "dramatic increase in value." (AC ¶67-68). He thus did not suffer any loss relating to his purchase.

violation of Section 20(a) of the Exchange Act and fails with the dismissal of Count I.  "Liability under Section 20(a) is secondary, and cannot exist without first establishing the primary liability" under Section 10(b).  *Lenartz v. Am. Superconductor Corp.*, 879 F.Supp.2d 167, 187 (D. Mass. July 26, 2012); *see also Suna v. Bailey Corp.*, 107 F.3d 64, 72 (1st Cir. 1997); *In re: Boston Tech. Sec. Litig.*, 8 F. Supp.2d 43, 72 (D. Mass. Feb. 5, 1998).[3]

## III.   PLAINTIFFS CANNOT MAINTAIN COUNTS I, II, III AND VI MISREPRESENTATION CLAIMS UNDER SECURITIES OR COMMON LAW.

All of Plaintiffs' claims of misrepresentation require the pleading of certain core elements, including identification of an allegedly material false representation or misleading omission, reliance on the purported misrepresentation, resulting damages and loss causation.  *See In re: PolyMedia Corp. Sec. Litig.*, 432 F.3d 1, 6-7 (1st Cir. 2005) (§10(b) and Rule 10b-5 elements); *Sullivan v. Five Acres Realty Trust*, 487 Mass. 64, 73 (2021) (fraud elements); *Fordyce v. Town of Hanover*, 457 Mass. 248, 257 (2010) (same). In addition, Plaintiff's securities and common law fraud claims also require the pleading of scienter or intent to deceive.  *See ACA Fin. Guar. Corp.*, *supra* at 58-59; *Masingill* v. *EMC Corp.*, 449 Mass. 532, 540 (2007).[4]

Moreover, Plaintiffs' misrepresentation claims are subject to the heightened pleading standards of Fed. R. Civ. P.  9(b) ("Rule 9(b)").  In cases "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.  9(b).

---

[3] With dismissal of the federal claims at Counts I and II, dismissal of this entire action under Rule 12(b)(1) for lack of subject matter jurisdiction is also appropriate.  *See Haslam v. McLaughlin*, 2022 U.S. Dist. LEXIS 203104, at *9-10 (D. Mass. Nov. 8, 2022).  Plaintiffs' purported Count IX claim for declaratory relief does not suffice to provide federal jurisdiction, as 28 U.S.C. § 2201 does not provide "an independent source of federal jurisdiction[.]" *Id.*  Dismissal of the securities claims upon which federal jurisdiction is premised "requires dismissal of claim for declaratory relief as well." *Id.*; *see also Tyler v. Michaels Stores, Inc.*, 840 F.Supp.2d 438, 452 (D. Mass. Jan. 6, 2012).  A mere demand for declaratory relief "does not by itself establish a case or controversy necessary to confer subject matter jurisdiction." *Transpac Marine, LLC v. Yachtinsure Svcs., Inc.*, 2023 U.S. Dist. LEXIS 23655, at *17 (D. Mass. Feb. 13, 2023).

[4] Except as otherwise noted herein, Defendants refer to Massachusetts law in addressing Plaintiffs' state law claims, without conceding the application of any particular state law to those claims.

These requirements are strictly applied in the First Circuit.  *Bio-Vita, Ltd. v. Rausch*, 759 F. Supp. 33, 37 (1st Cir. 1991).  A complaint alleging fraud must state "the who, what, where, and when" of the alleged deception.  *Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 91 (1st Cir. 2016).[5]

Additionally, a claim for securities fraud must satisfy the "exacting requirements" of the PSLRA, which "imposes two heightened pleading requirements on federal securities fraud claims beyond those enumerated in" Rule 9(b).  *Leavitt v. Alnylam*, 451 F.Supp.3d 176, 182 (D. Mass. Mar. 23, 2020).  First, "plaintiffs must specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  *Id.*; 15 U.S.C. § 78u-4(b)(1).  Second, to plead scienter, "plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted recklessly or with the intent to deceive, manipulate, or defraud."  *Leavitt*, *supra* at 182; 15 U.S.C. § 78u-4(b) (2); *see also Greebel v. FTP Software, Inc.*, 194 F.3d 185, 199 (1st Cir. 1999).

## A.   The AC Fails To Plead Fraud With Particularity As Required By Rule 9(b) And The PSLRA.

The AC does not allege that any of the six Defendants made any false statement of material fact; rather, it charges "Defendants" collectively with an omission: the failure to disclose the Company's nascent exploration in the area of radiation illness.[6]  However, the AC lacks the particularity necessary to satisfy Rule 9(b) and the PSLRA.  For example:

---

[5] Rule 9(b) also applies to "associated claims," including negligent misrepresentation, "where the core allegations effectively charge fraud."  *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009). *See also Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 57 (D. Mass. Mar. 23, 1995).

[6] Plaintiffs' reliance on group pleading is improper and fails to comply with Rule 9(b). *See Prudential Ins. Co. of America v. Turner & Newall, PLC*, 1988 U.S. Dist. LEXIS 15960, at *36 (D. Mass. Dec. 12, 1988) (fraud claims dismissed because allegations were "far too generic to comply with the strictures of Rule 9" when plaintiff referred to defendants collectively and included "no detail as to who made which statement, where and when"); *Goebel v. Schmid Bros., Inc.*, 871 F. Supp. 68, 73 (D. Mass. Oct. 14, 1994).

-6-

- The AC alleges at Paragraph 58 that "[a]t no point in any disclosures made to shareholders or potential investors prior to or during the CB Round did [Defendants] ever tell Ms. Wright about their plan to expand Silver Creek's business, and particularly into radiation illness" … but it fails to plead facts to establish that there was ever any such "plan"—or what the plan was, when it was developed or who knew about it.

- The AC alleges at Paragraph 59 that "no [Defendant] mentioned that Silver Creek had identified or conducted lengthy and costly research into the Silver Creek molecule to treat radiation illness" … but it fails to plead facts to establish when such research was conducted, or that it was in fact "lengthy" or "costly."

- The AC alleges at Paragraph 61 that the Company "had knowledge that its IP had shown extremely promising results in reducing the mortality caused by radiation illness" but "did not disclose to Ms. Wright these highly-favorable results in preclinical testing for radiation illness prior to the end of the CB Round" … but it fails to plead what these allegedly "extremely promising" or "highly-favorable" results were, much less when they were known or who had "knowledge" of them.

- The AC alleges at Paragraphs 52-53 that Defendants "possessed undisclosed, material details about the CB Round" and "participated in the investment opportunity" (suggesting that they invested with inside information), but it fails to plead what "undisclosed" details they possessed, when they became aware of such details, and or whether this predated any of their investments.

The AC merely alleges that the Company conducted a pre-clinical trial in the area of radiation illness at some unidentified point in time (AC ¶63); that results from the trial were available at some unidentified point in time (*id.*); and that three of the Company's directors invested in the CB Round at some unidentified point in time (*id.* ¶68). The remaining allegations are conclusory (*e.g.*, AC ¶67 ("Board's nondisclosure … was intentional")) or generic hyperbole (*e.g.*, allegations of "lengthy" and "costly" testing absent any specificity; allegations of "extremely promising results" absent any objective facts to establish what those results actually showed; allegations of a "dramatic increase in value of Silver Creek" absent any objective facts).[7]

---

[7] As further evidence of the scattershot nature of the AC, Plaintiffs allege at Paragraph 44 that a Company officer wrote to Dr. Bromberg on February 4, 2021 "without disclosing the successful trial or the company's plans regarding the radiation sickness market," but the AC contains no well-pleaded fact that the Company knew of any "successful trial" or had "plans" as of that date (or that the trial had even commenced or been completed by that date). Likewise,

Further, many of the "misrepresentation/fraud" allegations in the AC are pled "on information and belief" (AC ¶¶39, 40, 41, 42, 52, 62, 64, 78, 83, 102-106), without stating "all facts on which that belief is formed." *Leavitt*, *supra* at 182.[8]  The AC thus fails to plead the "the who, what, where, and when" of any alleged deception and is "far too generic to comply with the strictures of Rule 9" and the PSLRA.  *Prudential Ins. Co.*, *supra* at *36.

**B.  The AC Fails to Plead a False Statement or Actionable Omission.**

**1.  The AC Fails To Plead A False Statement.**

To state a claim for securities fraud, the plaintiff must allege that the defendant either: "(A) made an untrue statement of a material fact; or (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading." *Baron v. Smith*, 380 F.3d 49, 52 (1st Cir. 2004); *see also Fordyce*, *supra at* 57 (claim for common law fraud requires plaintiff to allege that "defendant made a false representation of material fact").  Although Count I alleges that Defendants (collectively) made "false material representations" (AC ¶¶90-92), the AC is devoid of any factual allegation (much less with the requisite particularity) that any of the six named Defendants individually made any false statements to either Plaintiff at any time.  *See e.g.*, *Buffalo-Water 1, LLC v. Fidelity Real Estate Company, LLC*, 481 Mass. 13, 25 (2018) ("there are no allegations in the complaint tending to show that [defendant] made … a false representation" to plaintiff).  Plaintiffs' boilerplate

---

Plaintiffs complain at Paragraphs 79-80 that Defendants should have disclosed earlier that the Company "had applied for a large United States Department of Defense grant to investigate the use of Silver Creek's intellectual property to treat radiation illness," but they ignore that the grant application occurred in August 2021, long after the CB Round was closed, and that it did not concern radiation illness.  (AC, Ex. H).  Plaintiffs' disregard for detail and even a basic timeline of pertinent events is antithetical to Rule 9(b) and the PSLRA.

[8] This failing is particularly noticeable with respect to Defendant Thomas Murtagh.  The AC does not contain well-pleaded facts that Mr. Murtagh ever communicated with either Plaintiff, that he engaged in any of the conduct alleged in the AC or that he even had knowledge of any conduct or communications by any other Defendant. *See e.g.* AC ¶41 (alleging "on information and belief" that Mr. Murtagh was "aware of and either approved or ratified" actions by other Defendants but failing to identify any factual basis for the belief).  In addition to the other reasons stated herein, all claims against Mr. Murtagh should be dismissed for failure to state a plausible claim against him.

allegation of "misrepresentations" does not suffice, as the AC does not contain any allegation that any Defendant communicated untrue information, much less plead such with particularity.

### 2.      The AC Fails to Plead An Actionable Omission.

The U.S. Supreme Court has held that absent an affirmative duty to disclose, pure omissions cannot form the basis of a Rule 10b-5 claim. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 174 (1994) ("[w]hen an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak"). *See also Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1202 (1st Cir. 1996) ("silence, absent a duty to disclose, cannot be actionably misleading"); *Gross v. Summa Four, Inc.*, 93 F.3d 987, 992 (1st. Cir. 1996) (a "corporation does not commit securities fraud merely by failing to disclose all nonpublic material information in its possession"). Similarly, in an action for common law misrepresentation, "nondisclosure can be actionable only where there is a duty to disclose." *Greenery Rehabilitation Group v. Antaramian*, 36 Mass.App.Ct. 73, 78 (Mass. App. Ct. Feb. 18, 1994); Restatement (Second) of Torts § 551 (1976). *See also Wolf v. Prudential-Bache Securities*, 41 Mass. App. Ct. 474, 476 (Mass. App. Ct. Oct. 10, 1996).

The AC alleges generally that "Defendants" failed to disclose the Company's nascent radiation illness testing efforts to Plaintiffs. (AC ¶37; 58-61; 63). Count I specifically alleges that "Defendants" (again, collectively) failed to disclose "(a) that Silver Creek had previously identified and conducted lengthy and costly research into [sic], or (b) that Silver Creek had already conducted preclinical trials and had knowledge that the Silver Creek molecule had shown extremely promising results in reducing the mortality caused by radiation illness." (AC ¶92). However, the AC does not contain any well-pleaded facts which plausibly allege an independent duty on the part of the Company to disclose that information. The AC merely alleges in conclusory fashion that "Defendants individually and collectively had a duty to disclose material information

about the Company in connection with the offering[,]" (AC ¶57), but fails to plead any basis for such a duty (*e.g.*, a statutory obligation). As the First Circuit has made clear, "the mere possession of material, nonpublic information does ***not*** create a duty to disclose it." *Hill v. Gozani*, 638 F.3d 40, 57 (1st Cir. 2011) (emphasis in original). *See also Gross*, *supra* at 992 (defendant "does not commit securities fraud merely by failing to disclose all nonpublic material information").

The AC also fails to allege that any Defendant made any statement regarding radiation illness testing that was not complete or accurate or required supplementation in order to make it not misleading. *See In re Boston Sci. Corp. Sec. Litig.*, 686 F.3d 21, 27 (1st Cir. 2011) (Section 10(b) "do[es] not create an affirmative duty to disclose any and all material information," but "extends to omissions only where affirmative statements are made and the speaker fails to reveal those facts that are needed so that what was revealed would not be so incomplete as to mislead"). In the absence of an allegation of an affirmative duty to disclose, or of any statement upon which to premise a duty to disclose *more*, the AC fails to plead an actionable omission under the heightened pleading requirements of Rule 9(b) and the PSLRA.

### 3.     The AC Fails to Plead A Strong Inference Of Scienter.

The "required state of mind" for liability under section 10(b) and Rule 10b-5 is "intent to deceive, manipulate, or defraud," or recklessness that goes beyond "ordinary negligence and is closer to a lesser form of intent." *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 96 (1st Cir. 2007); 15 U.S.C. § 78u-4(b)(2). At the pleading stage, a mere "reasonable" inference of scienter is insufficient to survive a motion to dismiss. *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir. 1999). Rather, to establish scienter, "the pleaded facts must give rise to a 'strong inference' that the defendant had actual knowledge that the representation or omission was misleading." *Local No. 8 IBEW Ret. Plan v. Vertex Pharms., Inc.*, 140 F.Supp.3d 120, 130 (D. Mass. Sept. 30, 2015). Scienter "should be evaluated with reference to the complaint as a whole

-10-

rather than to piecemeal allegations." *Id.* "It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind; [i]nstead, the court must engage in a comparative evaluation and weigh competing inferences to determine whether the inference of scienter is cogent and compelling." *Id.*, *quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) ("an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent"). In the First Circuit, the inference of scienter is not strong "when, viewed in light of the complaint as a whole, there are legitimate explanations for the behavior that are equally convincing." *Rodriguez-Ortiz*, *supra* at 96.

The AC fails to state with particularity facts giving rise to a "strong inference" that any Defendant acted with an intent to deceive, manipulate or defraud. First, Plaintiffs make numerous scienter allegations "on information and belief" (*e.g.*, ¶¶39-42, 52, 62, 64, 78, 83, 102-106), but the source of Plaintiffs' purported "information" and the reasons for their "belief" are not identified and therefore those allegations are insufficient as a matter of law. *See Maldonado v. Dominguez*, 137 F.3d 1, 10 (1st Cir. 1998); *Greebel*, 194 F.3d at 191. Further, the AC attempts—improperly— to use group pleading to establish scienter. (AC ¶85) (alleging generally that "*Defendants'* failure to disclose all material information to Plaintiffs in connection with the CB Round was intentional, and done with a conscious intent to defraud") (emphasis added).

Moreover, while the AC alleges that the "Defendants" failed to disclose information regarding "extremely promising" radiation illness test results so that they could invest at a "lower price" to the detriment of Plaintiffs, it does not include any allegation as to when these purported test results were available, when any of the Defendants knew of the test results, or when any of the Defendants invested in the CB Round (much less relative to the timing of the test results), to

-11-

establish anything remotely approaching an inference of scienter with regard to any individual Defendant (much less all of them).  The AC attempts to allege that "knowing the Company's true plans, Mr. Throsby, Mr. Taylor and Mr. Agne did invest in Silver Creek during the CB Round, at an improperly low valuation, for their own unfair personal gain," (*id.* ¶ 64) but, again, it fails to plead facts necessary to establish a timeline that would support even a hint of improper conduct. *See Coyne v. Metabolix, Inc.*, 943 F.Supp.2d 259, 273 (D. Mass. Sept. 20, 2013) ("there is no way, from the allegations in the operative complaint, to infer what defendants knew or when").  Put simply, the AC does not include any well-pleaded allegations to support a strong inference that any Defendant had "actual knowledge" that the nondisclosure of radiation illness testing was "misleading."  *Local No. 8*, *supra* at 130.  *See also City of Bristol Pension Fund v. Vertex Pharm., Inc.*, 12 F.Supp.3d 225, 239-40 (D. Mass. 2014) (dismissing 10b-5 claims where plaintiffs offered "few concrete allegations" to support allegation that defendants knew statements were false).  Nor does it allege with particularity that any Defendant traded improperly.  *See Tharp v. Acacia Corp.*, 321 F.Supp.3d 206, 229 (D. Mass. 2018) (plaintiffs failed to plead a strong inference of scienter because they "fail to show how these specific sales were in fact unusual or suspicious").

More substantively, the theory underpinning the AC is poorly conceived and defies basic common sense.  Plaintiffs allege that **__all__** of the directors of Silver Creek, a private, early-stage biotech company seeking to raise additional capital, intended to deceive potential investors into **__not investing__** during the CB Round.  This makes no sense whatsoever; Defendants had no reason to deceive the very investors whom they were soliciting.  If they thought information regarding radiation illness testing was worth disclosing, they would have disclosed it.  Plaintiffs do not present a "cogent and compelling" inference of scienter as to any Defendant when weighed against plausible inferences of non-fraudulent conduct.  Specifically, the Board informed Ms. Wright that:

*ACTIVE 691039389v2*

> The goal of a radiation study was to make a very small expenditure in a limited preclinical trial to support a possible initial engagement with a variety of research and government agencies. There was never any market sizing work contemplated, executed or documented. The path was not seen as one of commercial exploitation, rather a chance to explore the therapeutic potential of scp776 and – through potential partnership with a government agency – to achieve a meaningful validation for our technology, part of the overall strategy of gaining momentum in the perception of the platform. …
>
> [T]he assessment made by the Company and the Board was that the scale of the initial radiation illness effort (at less than 1% of the investment we are making in stroke) and the likelihood of a significant outcome were both so small and so remote as to not be material in the context of disclosures for the CB fund raise.

(AC ¶77; Ex. G).  When the AC is viewed holistically, "there are legitimate explanations for the behavior that are equally convincing" such that any inference of scienter necessarily fails.  *See Tellabs*, 551 U.S. at 314.  Far from suggesting an intent to deceive, manipulate or defraud, the AC establishes the Board's assessment of the non-disclosed information and the reasonable basis (small scale, limited likelihood of success, unproductive feedback) for nondisclosure.

### 4.      The AC Fails to Plead Economic Loss or Loss Causation.

In *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005), the U.S. Supreme Court held that a private plaintiff claiming securities fraud must prove that the defendant's fraud caused an economic loss.  Under the PSLRA, "the plaintiff shall have the burden of proving that the act or omission of the defendant … caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u-4(b)(4).  To plead loss causation, a plaintiff must have "adequately alleged a causal connection between the [D]efendants' material misrepresentations and the drop in … share price."  *In re Boston Sci. Corp. Secs. Litig.*, 2022 U.S. Dist. LEXIS 228447, at *75 (D. Mass. Dec. 20, 2022), *citing Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 237 (1st Cir. 2013).  Typically, "to satisfy the loss causation requirement, the plaintiff must show that the revelation of [a] misrepresentation or omission was a substantial factor in causing a decline in the security's

-13-

price, thus creating an actual economic loss for the plaintiff." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425-26 (3d Cir. 2007).  Even in a "non-typical" §10(b) claim – *i.e.*, one involving misrepresentations or omissions that induced another party into entering a private transaction rather than "fraud on the market" in connection with a publicly traded stock – the plaintiff "must show a decline in the value of the securities to establish the economic-loss element[.]"  *See e.g. Joyce v. Bobcat Oil & Gas, Inc.*, 2008 U.S. Dist. LEXIS 27181, at *17-18 (M.D. Pa. Apr. 3, 2008).

Here, economic loss and loss causation are intertwined.  Plaintiffs have not alleged any economic loss because they have not alleged that they purchased securities which declined in value.[9]  And, since they have not alleged a purchase which led to economic loss, they also cannot satisfy the loss causation element.  Plaintiffs' fundamental problem – from both a standing and economic loss/causation standpoint – is that they have not alleged a securities transaction upon which a plausible claim might be based.  Rather, their claims are based on securities which they *did not purchase*.[10]  "It is a well settled precept that in order to allege a violation of Section 10 and Rule 10b-5 a transaction involving securities must be present."  *Rodriguez Cadiz v. Mercado Jiminez*, 579 F.Supp. 1176, 1182 (D.P.R. Nov. 30, 1983).  *See also In re Polaroid Corp. Secs. Litig.*, 134 F.Supp.2d 176, 188 (D. Mass. Mar. 21, 2001) (Saris, J.) (noting that loss causation consists of both transaction causation and loss causation, that "transaction causation means that the violations in question caused the plaintiffs to engage in the transaction in question" and that "a

---

[9] Further, the federal securities laws do not contemplate a fact pattern whereby plaintiffs' claim to harm is that they were unfairly diluted by other purchasers in a financing round.  *See e.g. Webb v. Fain*, 2002 U.S. Dist. LEXIS 25578, at *7-8 (D. Or. Oct. 3, 2002) (holding that plaintiffs failed to state a viable 10b-5 claim because "[t]his claim appears to be based on a theory of dilution rather than on a purchase or sale of securities" and "[a]llegations of dilution unsupported by allegations of a purchase or sale are insufficient to support a claim under Rule 10b-5").

[10] To the extent that any of Dr. Bromberg's claims are based on securities that he did purchase, he alleges a "dramatic increase in value" (AC ¶67) and therefore he cannot establish economic loss or loss causation with regard to his purchased securities.

-14-

plaintiff must allege that the misstatements were the reason the transaction turned out to be a losing one"). Central to the causation analysis is an actual securities transaction. Here, however, there was no "transaction" – much less a "losing one" – and therefore no plausible allegation of an economic loss or loss causation.[11]

### 5. Nondisclosure Will Not Support a Claim for Negligent Misrepresentation.

As an alternative to fraud, the AC attempts to plead a claim of negligent misrepresentation at Count III. While couched as a claim based on "misrepresentations," the AC fails to identify any false statements (*see* Section III(C)(1), *infra*) and Count III is in effect a claim for negligent omission or nondisclosure. However, "mere nondisclosure by itself generally will not support a cause of action for negligent misrepresentation." *Santos v. Sanyo Mfg. Corp.*, 2013 U.S. Dist. LEXIS 63596, at \*17 (D. Mass. May 3, 2013); *Adams v. Hyannis Harborview, Inc.*, 838 F. Supp. 676, 694 (D. Mass. 1993), *citing Nei v. Burley*, 388 Mass. 307, 310-311 (1983); *see also Gossels v. Fleet Nat. Bank*, 453 Mass. 366, 372 (2009) ("bare nondisclosures" do not trigger liability for negligent misrepresentation). A defendant may be liable for nondisclosure only if he provides partially misleading information or half-truths requiring correction. *See e.g. Access Cardiosystems, Inc. v. Fincke*, 404 B.R. 593, 643 (Bankr. D. Mass. 2009). But here the AC does not allege that any Defendant made partially misleading disclosures or half-truths regarding radiation illness testing; rather, it alleges that Defendants failed to disclose such testing at all. As such, the AC fails to plead a claim for negligent misrepresentation in accordance with Rule 9(b).[12]

---

[11] The lack of a securities transaction affects both standing and loss causation and illustrates why standing under § 10(b) is limited to actual purchasers of securities, as otherwise courts would be inundated with plaintiffs alleging, in hindsight (as here), that they "would have purchased" securities but for some alleged misrepresentation.

[12] In addition, to survive motion to dismiss, a complaint must allege that the plaintiff suffered a pecuniary loss as a consequence of her reliance on a defendant's alleged misrepresentation. *See Kiluk*, *supra* at \*17; *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 15 (1st Cir. 2017). The AC does not plausibly allege that either Plaintiff suffered pecuniary loss.

**IV.    PLAINTIFFS' OTHER SCATTERSHOT COUNTS IV, V, VII, VIII AND IX ARE NOT WELL-PLEADED AND FAIL AS A MATTER OF LAW.**

> **A.    Counts IV and V Fail To State A Claim For Breach of Contract Or The Implied Covenant Because Ms. Wright Received Contractual Notice.**

Count VIII alleges that Silver Creek breached an Investors' Rights Agreement ("IRA") and Count IX alleges it breached of the covenant of good faith and fair dealing "by failing to provide proper notice or disclosure to Ms. Wright in connection with the right of first offer in regards to the CB Round." (AC ¶¶126-129).  It is horn-book law that in order to state a claim for breach of contract, a plaintiff must plead both the circumstances of "defendants' breach" and "damages to plaintiff as a result of the breach."  *McIntosh v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 102588, at *13 (N.D. Cal. June 11, 2020), *citing CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (Cal. Ct. App. 2008).  If a breach of contract claim is not plausible, a plaintiff "cannot allege an attendant breach of the covenant of good faith and fair dealing" because the "covenant does not impose substantive duties beyond the specific terms of the contract[]." *McIntosh*, *supra* at *18, *citing Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327 (Cal. 2000).

Generally, Ms. Wright alleges that the IRA afforded her "with the right to a meaningful and informed opportunity to participate in all future securities offerings by Silver Creek" and "required the Company to provide full, fair and complete notice of any and all future investment opportunities in Silver Creek at the time(s) they became available to Ms. Wright."  (AC ¶113). However, although the AC refers obliquely to Section 2.4 of the IRA, it does not cite the language of that provision or provide any details regarding its purported requirements.  Instead, Ms. Wright alleges generally that "Silver Creek breached this agreement by failing to provide proper notice or disclosure to [her] in connection with the right of first offer in regards to the CB Round" and that she "has been and continues to be damaged by this breach in an amount to be proven at trial." (AC ¶¶116-117).  Counts VIII and IX fail to plausible state claims for relief because they do not identify

-16-

(i) any terms or provisions of the IRA which the Company allegedly breached, or (ii) how Ms. Wright was conceivably damaged by such a breach (if it even occurred).

The AC acknowledges that Ms. Wright received notice and an opportunity to participate in the CB Round: (i) "[i]n or about December 2021, the Company … announced to Silver Creek shareholders that in 2022 they would seek to raise additional capital from investors through the sale of unsecured notes convertible into Silver Creek capital stock," (ii) "[t]he Company offered the CB Round to existing shareholders of Silver Creek," (iii) "[t]he company set upper and lower limits on the valuation" and "communicated the floor and the ceiling to Ms. Wright in writing," (iv) "[o]n December 23, 2021, [the Company] first informed Ms. Wright about the CB Round investment opportunity by email," (v) Ms. Wright engaged in email exchanges with Company representatives about the CB Round in December 2021 and January 2022, including the terms of the offering, (vi) the Company offered to have a conference call with Ms. Wright to discuss her concerns regarding the CB Round, (vii) the Company "organized a 'zoom' call on February 17, 2022 and distributed an information packet to the shareholders of Silver Creek "to also ensure all investors have the most up to date and comprehensive information when making decisions on participation in the current fund raising round," (vii) Ms. Wright was "invited to and did participate on the February 17, 2022 'zoom' call," and (viii) the CB Round was open through June 30, 2022. (AC ¶¶ 34-36, 43, 45-50, 55-56, 64; Ex. A-C, F). To the extent Ms. Wright alleges that the purpose of the IRA was to afford her "full, fair and complete notice" of the CB Round and a "meaningful and informed opportunity to participate," the AC demonstrates that she had such notice and opportunity. Absent any specific allegation regarding the terms of the IRA or the Company's obligations thereunder, the AC fails to plausibly allege a breach of contract.[13]

---

[13] Even if Ms. Wright claims she did not receive formal notice, she clearly received constructive notice.

*ACTIVE 691039389v2*

More problematic, however, is that even if there were a breach, the AC fails to plead that Ms. Wright suffered damages as a result.  Her boilerplate allegation that she "continues to be damaged by this breach in an amount to be proven at trial" (AC ¶117) is conclusory and does not constitute a well-pleaded fact.  The AC does not allege that Ms. Wright was prohibited from investing in the CB Round, that her stockholder rights were affected in any way or that she suffered any economic loss.  Thus, even if the Company did fail to provide the precise notice required by the IRA (the terms of which Ms. Wright does not allege), the AC does not plead that Ms. Wright was harmed in any way as a result.  Rather, the AC demonstrates that she had every opportunity to participate in the CB Round between January and June 2022 but chose not to do so.[14]

**B.    Count VII For Breach of Fiduciary Duty Is Derivative And Plaintiffs Fail To Satisfy The Prerequisites of Rule 23.1.**

Plaintiffs allege that Defendants breached their fiduciary duties "by prioritizing their own personal and/or financial interests in relation to the CB Round fundraising effort, which was unfair to the Plaintiffs, both Silver Creek shareholders."  (AC ¶125).[15]  Plaintiffs also complain that the CB Round resulted "in significant dilution to existing stockholders."  (AC ¶69). This is "a quintessential example of a derivative claim." *Carr v. New Enter. Assocs.*, 2018 Del. Ch. LEXIS 100, at *26 (Del. Ch. Mar. 26, 2018) (finding claim that "defendants executed the Series A-2 Financing to dilute unfairly certain other ACT stockholders" to be derivative) (*citing El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1265 (Del. 2016) (Strine, C.J.,

---

[14] To the extent Ms. Wright contends that she was unfairly diluted (which the Company denies), such dilution was not the result of a purported "lack of notice" but rather Ms. Wright's own decision not to participate in the CB Round. And, to the extent Ms. Wright is heard to complain that she did not have "meaningful" notice of the CB Round because the Company failed to disclose its nascent radiation illness testing efforts, the AC fails to plead that the IRA required specific disclosures about the Company or its business efforts, as opposed to notice of future securities offerings.

[15] Under the Massachusetts "internal affairs" doctrine, the law of the state of incorporation (here, Delaware) applies to disputes over the internal workings of the corporation, including allegations of breach of fiduciary duty. *Harrison v. NetCentric Corp.*, 433 Mass. 465, 470-72 (2001); *see also* AC ¶4 (Silver Creek incorporated in Delaware).

-18-

concurring); *Green v. LocatePlus Holdings, Corp.*, 2009 Del. Ch. LEXIS 85, at *2 (Del. Ch. May 15, 2009); *see also Brookfield Asset Mgmt. v. Rosson*, 261 A.3d 1251, 1268 (Del. 2021).  Plaintiffs cannot plead around these principles by framing their claim as a breach of the "duty of candor." *See e.g.*, *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 773–76 (Del. 2006). Because Plaintiffs' claim is derivative, it belongs to the Company.  To proceed in court, Plaintiffs must comply with the "demand requirement" found in Fed. R. Civ. Proc. § 23.1, which requires the pleading of "any effort by the plaintiff to obtain the desired action from the directors" or "the reasons for not obtaining the action or not making the effort."   Plaintiffs have made no such pleading effort here, and thus their derivative claim must be dismissed.

Further, director decision making (such as to the pricing and disclosure of the CB Round) is protected by the business judgment rule, which "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Globis Partners, L.P. v. Plumtree Software, Inc.*, 2007 Del. Ch. LEXIS 169, at *14 (Del. Ch. Nov. 30, 2007).  Here, the AC fails to rebut the presumption.  The AC fails to plead any facts to support a plausible claim that the CB Round was mispriced—indeed it was priced with a reset to take into account the challenges to valuing early-stage biotech companies and protect investors—or that there was inadequate disclosure.  The AC fails to plead that the individual Defendants did anything other than exercise sound business judgment and as a result it fails to state a claim for breach of fiduciary duty that is plausible on its face.[16]

---

[16] In addition, to survive a motion to dismiss, a plaintiff must provide some basis for a court to infer that the alleged omissions were material, by "alleg[ing] that facts are missing from the statement, identify[ing] those facts, stat[ing] why they meet the materiality standard and how the omission caused injury." *Globis Partners, supra* at *37.  As noted throughout this brief, the AC utterly fails to plead how a limited pre-clinical rodent trial in the area of radiation illness, which represented less than 1% of the Company's investment in its primary area of scientific research and had no actual economic impact on or benefit to the Company, was "material" for disclosure purposes.

*ACTIVE 691039389v2*

**C.**   <u>**Count VIII For Unjust Enrichment Fails Due To Remedies At Law**</u>.

Plaintiffs' Count VIII common law claim for unjust enrichment fails "because a party with an adequate remedy at law cannot claim unjust enrichment."  *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017).  This is true even if a plaintiff's remedies at law are dismissed, because "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment."  *Id.*; *see also Tomasella v. Nestlé United States*, 962 F.3d 60, 82-83 (1st Cir. 2020); *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012) ("mere availability" of a remedy at law bars a claim for unjust enrichment).

**D.**   <u>**Count IX For Declaratory Relief Fails To Plead a Live Controversy**</u>.

In addition to the jurisdictional defects discussed at footnote 3, *infra*, Count XIV fails because the AC does not establish a "live and acute controversy" under Article III of the U.S. Constitution.  *See Shell Oil Co. v. Noel*, 608 F.2d 208, 213 (1st. Cir. 1979).  Indeed, Count IX reaches far beyond the allegations pled in the AC to seek a declaration as to Plaintiffs' rights as shareholders (ostensibly under Delaware law) and to "void" the entire CB Round on the grounds that it was "not authorized by the affirmative votes of a majority of fully informed, disinterred directors" or otherwise "not fair to Silver Creek" (AC ¶144-146).  But nowhere in the AC do Plaintiffs attempt to set up the factual predicate for such extraordinary relief, nor do they attempt to explain why a capital round in which one of them refused to participate should be "void[ed] in its entirety" to the detriment of the numerous investors who elected to participate and have asserted no complaints.  The Court lacks jurisdiction to consider Count IX (*see* fn. 3, *infra*); Count IX fails to plead an actual case or controversy; and even if Count IX did plead a case or controversy the Court should decline to exercise its discretion to entertain the claim, as there are no well-pleaded facts to state a plausible claim for the declaratory relief that Plaintiffs seek.  *See Zurich Am. Ins. Co. v. Watts Regul. Co.*, 796 F. Supp. 2d 240, 246 (D. Mass. 2011).

## <u>CONCLUSION</u>

Defendants respectfully request that the Court dismiss the AC in its entirety.

Dated: October 24, 2023

Respectfully Submitted,

*/s/ John K. Wells*
John K. Wells (BBO #671345)
GREENBERG TRAURIG, LLP
One International Place, Suite 2000
Boston, Massachusetts 02110
Tel: (617) 310-6039
Email: wellsj@gtlaw.com

Kevin G. Kenneally
Warren D. Hutchison
Ben Dunlap
FREEMAN, MATHIS & GARY, LLP
60 State Street, Suite 600
Boston, MA 02109-1800
Tel: (617) 963-5968
Email: kevin.kenneally@fmglaw.com

*Attorneys for Defendants Silver Creek*
*Pharmaceuticals, Inc., Nick Taylor, Timothy*
*Throsby, Mark Agne, James Marks and*
*Thomas Murtagh*